**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| COMMWORKS SOLUTIONS, LLC<br><br>Plaintiff,<br><br>v.<br><br>MICROCHIP TECHNOLOGY INC.,<br><br>Defendant. | Civil Action No. 7:26-cv-00043<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff CommWorks Solutions, LLC ("CommWorks" or "Plaintiff") files this complaint against Defendant Microchip Technology Inc. ("Microchip" or "Defendant"), alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.     This is a patent infringement action for Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents"), issued by the United States Patent and Trademark Office ("USPTO"):

| U.S. Patent No. | Title | Available At |
|---|---|---|
| 1) 6,832,249 | Globally Accessible Computer Network-Based Broadband Communication System With User-Controllable Quality Of Information Delivery And Flow Priority | https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdf RedirectDownload/6832249 |
| 2) 7,177,285 | Time Based Wireless Access Provisioning | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7177285 |
| 3) 7,463,596 | Time Based Wireless Access Provisioning | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7463596 |
| 4) 7,911,979 | Time Based Access Provisioning System And Process | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7911979 |

| U.S. Patent No. | Title | Available At |
|---|---|---|
| 5) RE44,904 | Method For Contention Free Traffic Detection | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/RE44904 |
| 6) 7,027,465 | Method For Contention Free Traffic Detection | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7027465 |
| 7) 6,891,807 | Time Based Wireless Access Provisioning | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6891807 |

2.      Plaintiff seeks monetary damages.

## PARTIES

3.      CommWorks is a limited liability company formed under the laws of the State of Georgia with its registered office address located in Alpharetta, Georgia (Fulton County).

4.      On information and belief based upon public information, Defendant Microchip Technology Inc. is a corporation incorporated under the laws of Delaware, has a principal place of business at 2355 West Chandler Blvd., Chandler, Arizona 85224-6199.

5.      Microchip Technology Inc. may be served with process at Corporation Service Company, 7955 S. Priest Dr., Suite 102, Tempe, Arizona 85284.

## JURISDICTION AND VENUE

6.      CommWorks repeats and re-alleges the allegations in paragraphs 1-5 above as though fully set forth in their entirety.

7.      This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

8.      Venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1400(b) because it has maintained an established and regular place of business in this District and has committed acts of patent infringement in this District. *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

9. Defendant is subject to this Court's specific and general personal jurisdiction under due process and/or the Texas Long Arm Statute due at least to Defendant's substantial business in this judicial district, including: (i) at least a portion of the infringement alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District.

10. Specifically, Defendant intends to do and does business in, has committed acts of infringement in this District, in this State of Texas, and in the United States, directly or through intermediaries, and offers its products or services, including those accused of infringement here, to customers and potential customers located in this state, including in this District, and in the United States.

11. Defendant maintains regular and established places of business in this District.

12. Upon information and belief and based upon public information, Defendant owns, operates, manages, conducts business, and directs and controls the operations of, and has employees that work from and out of, facilities at locations in this District, including, but not limited to, a facility at the following address: Austin at 8601 Ranch Rd 2222, Park Centre BLDG 3, Austin, TX 78730. *See* Microchip.com, last visited February 10, 2026.

13. Microchip has either admitted or not contested that this federal judicial district is a proper venue for patent infringement actions against it. *See*, *e.g.*, Answer to 1st Am. Compl. ¶ 14, Vantage Micro LLC v. Microchip Tech. Inc., No. W-19-cv-581 (W.D. Tex. Feb. 18, 2020), ECF No. 22, answering 1st Am. Compl. ¶ 14, ECF No. 16 (Feb. 4, 2020); Answer ¶ 5, Far North Patents, LLC v. Microchip Tech. Inc., No. 6:20-cv-221 (W.D. Tex. Jun. 23, 2020), ECF No. 17, answering Compl. ¶ 5, ECF. No. 1 (Mar. 25, 2020). Microchip has also admitted or failed to contest that it has transacted business in this district. *See*, *e.g.*, Answer to 1st Am. Compl. ¶ 13, Vantage Micro LLC v. Microchip Tech. Inc., No. W-19-cv-581 (W.D. Tex. Feb. 18, 2020), ECF No. 22,

answering.

14.    Defendant has purposefully directed infringing activities at residents of the State of Texas, and this litigation results from those infringing activities. Defendant regularly sells (either directly or indirectly), its products within this District. For example, Defendant has placed and continues to place the Accused Products into the stream of commerce via an established distribution channel with the knowledge or understanding that such products are being and will continue to be sold in this District and the State of Texas. Defendant is subject to this Court's specific and/or general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due to its substantial and pervasive business in this State and District, including its infringing activities alleged herein, from which Defendant derives substantial revenue from goods sold to Texas residents and consumers.

15.    Defendant markets, sells, and delivers Accused Products in this district and has committed acts of infringement in this District.

16.    Defendant commits acts of infringement from this District, including but not limited to, use of the Accused Products in an infringing manner.

17.    Defendant has committed acts of direct patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice.

18.    Defendant commits acts of infringement from this District, including, but not limited to, importing, selling, offering for sale, using, installing, and/or testing of the Accused Products, and inducement of third parties to use the Accused Products in an infringing manner.

## THE ACCUSED PRODUCTS

19.     CommWorks repeats and re-alleges the allegations in paragraphs 1-18 above as though fully set forth in their entirety.

20.     Defendant uses, causes to be used, manufactures, provides, supplies, or distributes one or more Microchip Systems-on-Chips (SoCs), and/or devices, including, but not limited to the "Accused Products," set forth below:

- Microchip SoCs and/or devices supporting **Wi-Fi Multimedia and 802.11-2007+** functionality (the "Microchip Wi-Fi Multimedia Products"), which include but are not limited to:

    o   Microchip RN1810 Wi-Fi Module,

    o   ATSAMW25 SmartConnect Wi-Fi Module,

    o   ATWILC1000 Wi-Fi® Link Controller Module,

    o   ATWILC1000B-MUT Link Controller SoC,

    o   Microchip PIC32MZ-W1 Wi-Fi SoC and Module Family (WFI32E01Px),

    o   ATWINC3400-MR210CA (WFA62065-6834608, WFA62065-3370709),

    o   ATWINC15x0-MR210xB SmartConnect IoT Module,

    o   ATWINC1510-MR210PB (WFA61069-6781578, WFA61069-3141909),

    o   ATSAMW55 (ATSAMW55-ZR210CA),

    o   ATWILC3000-MR110xA Link controller Module,

    o   BGW 150 Border Gateway,

    o   CY920 Reference Design (DM920),

    o   CE-2-EVK - JukeBlox Development Kit (CE-2),

    o   SMSC CX870 Reference Design (WFA14015 - 14513),

    o   OZMO2000 Wireless Mouse (ATOZMO2000),

- o RN-131 (G2M5477),

- o ATWINC15x0B-MU (ATWINC1500B, ATWINC1510B), and

- o ATWILC1000-MR110xB (ATWILC1000-MR110PB, and ATWILC1000-MR110UB).

- Microchip devices/chips supporting **Wi-Fi Protected Setup (WPS)** functionality (the "Microchip WPS Products") which include but are not limited to:

  - o Microchip RN1810/RN1810E Wi-Fi Module,

  - o Wi-Fi G Demo Board,

  - o MRF24WG0MA/MB Wi-Fi Module,

  - o RN1723 Wireless LAN Module,

  - o RN171 Wireless LAN Module,

  - o RN-XV-EK Evaluation Board,

  - o RN171XV Wi-Fi module,

  - o ATSAMW25 SmartConnect Wi-Fi module,

  - o RN-131G & RN-131C Wireless LAN Module (G2M5477),

  - o RN-131 Evaluation Kit,

  - o MRF24WN0MA PICtail™/PICtail Plus Daughter Board,

  - o CE-2-EVK - JukeBlox Development Kit (CE-2),

  - o Microchip CY920 Reference Design (DM920),

  - o MRF24WN0MB Wi-Fi Module,

  - o SMSC CX870 Reference Design (WFA12856 - 13199), OZMO2000 Wireless Mouse (ATOZMO2000),

  - o ATWINC15x0 Wi-Fi® Network Controller (ATWINC1500), and

  - o ATWINC1500-XSTK Xplained Pro Starter Kit.

- Microchip chips with IEEE 802.3ah support (the "IEEE 802.3ah Products") which include but are not limited to:

---

- o  DA16200; and

- o  DA16200MOD.

- Microchip chips and/or devices with ITU-T G.984 and/or ITU-T G.9807.1 functionality (the "ITU-T Products"), which include but are not limited to:

  - o  PAS5211; and

  - o  PAS740x GPON ONT SoC Device Family (PAS7400B, PAS7401B, PAS7401BV).

- Microchip chips and/or devices with IEEE 802.3ah support (the "802.3ah Products"), which include, but are not limited to:

  - o  Microchip PM5451 HyPHY-AXS OTN Processor,

  - o  PM5441 DIGI-60G OTN Processor,

  - o  PM5456 HyPHY-10Gflex OTN Processor,

  - o  PM5450 HyPHY-20Gflex OTN Processor,

  - o  PM5440 DIGI-120G OTN Processor,

  - o  Router PHY devices (PM5992, PM5993, PM5984, and PM5985),

  - o  PM5442,

  - o  PM5337,

  - o  VSC8552,

  - o  VSC8504,

  - o  VSC8562,

  - o  VSC8572,

  - o  VSC8512,

  - o  VSC8582,

  - o  VSC8564,

  - o  VSC8574,

- o VSC8575,

- o VSC8584,

- o VSC6817,

- o PM5426 HyPHY-10G,

- o VSC7416,

- o VSC7418,

- o VSC7438,

- o VSC7464,

- o VSC7468,

- o VSC7430,

- o VSC7435,

- o VSC7436,

- o VSC7437,

- o PM5420 HyPHY-20G, and

- o VSC8662.

- All other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions (collectively, the "Accused Products").

21.    On information and belief, Defendant provides information and assistance to its customers to enable them to use the Accused Products in an infringing manner as described below.

22.    For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

## COUNT I:   INFRINGEMENT OF U.S. PATENT NO. 6,832,249

23.    CommWorks repeats and re-alleges the allegations in paragraphs 1-22 above as though fully set forth in their entirety.

24.    For purposes of this Count I, the Accused Products first include Microchip chips and/or devices with IEEE 802.3ah support, including, but not limited to, the Microchip PM5451 HyPHY-AXS OTN Processor, PM5441 DIGI-60G OTN Processor, PM5456 HyPHY-10Gflex OTN Processor, PM5450 HyPHY-20Gflex OTN Processor, PM5440 DIGI-120G OTN Processor, Router PHY devices (PM5992, PM5993, PM5984, and PM5985), PM5442, PM5337, VSC8552, VSC8504, VSC8562, VSC8572, VSC8512, VSC8582, VSC8564, VSC8574, VSC8575, VSC8584, VSC6817, PM5426 HyPHY-10G, VSC7416, VSC7418, VSC7438, VSC7464, VSC7468, VSC7430, VSC7435, VSC7436, VSC7437, PM5420 HyPHY-20G, and VSC8662 (the "802.3ah Accused Products").

25.    For purposes of this Count I, the Accused Products also include Microchip chips with ITU-T G.984 and/or ITU-T G.9807.1 functionality, including, as a non-limiting example, the PAS5211, and the PAS740x GPON ONT SoC Device Family (PAS7400B, PAS7401B, PAS7401BV) (the "ITU-T Accused Products").

26.    The USPTO duly issued U.S. Patent No. 6,832,249 (the "'249 patent") on December 14, 2004, after full and fair examination of Application No. 09/860,801 which was filed May 18, 2001. The '249 patent is entitled "Globally Accessible Computer Network-Based Broadband Communication System with User-Controllable Quality of Information Delivery and Flow Priority."

27.    CommWorks owns all substantial rights, interest, and title in and to the '249 patent, including the sole and exclusive right to prosecute this action and enforce the '249 patent against infringers and to collect damages for all relevant times.

28.    CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '249 patent.

29.    The claims of the '249 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. At the time of the invention, millions of Internet users being online simultaneously, thereby causing congestion (too many users) and latency (long pauses and delays), presented a difficult bandwidth load management challenge. '249 patent at 1:32-34, 2:34-36. No conventional routing system existed that avoided the congestion and best effort delivery methods then used by the Internet. *Id.* at 2:8-10. Conventional routing systems relating to multiple OSI layers also did not consistently ensure quality of service. *Id.* at 6:53-63. 97. The invention of the '249 patent improved upon the conventional services delivery systems by enabling quality of service control by content providers, Application Service Providers (ASPs), ISPs, and, by extension, their customers. *Id.* at 3:60-63. Additional improvements over the conventional services delivery systems afforded by the invention of the '249 patent included bridging the gaps between the layers of the OSI reference model; ensuring more control by users over the priority of their information flow; more control by network administrators over the congestion of their networks; and more control by content providers over costs and the experiences they provide to their users. *Id.* at 3:65-4:2, 6:53-63. 98. Defendant has directly infringed the '249 patent by making, using, offering to sell, selling, and/or importing the 802.3ah and ITU-T Accused Products identified above.

30.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claims 11 and 38 of the '249 patent, as detailed in **Exhibits A-1, A-2, and A-3** (Evidence of Use Regarding U.S. Patent No. 6,832,249).

31.    On information and belief, Defendant has infringed one or more claims of the '249 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States the 802.3ah Accused Products and the ITU-T Accused Products identified above.

32.    For example, as detailed in Exhibit A-1, Defendant has infringed at least claim 11 of the '249 Patent by making, using, offering to sell, selling, and/or importing the 802.3ah Accused Products, which perform a method for providing broadband communications over a multi-layered network having a plurality of Open System Interconnection (OSI) reference model layers functioning therein, comprising: monitoring at least one OSI reference model layer functioning in the multi-layered network; determining that a quality of service event has occurred in the multilayered network; determining that the quality of service event occurred at a layer N in the OSI reference model; responding to the quality of service event in the multi-layered network by changing network provisioning at a layer less than N; and signaling that the network provisioning at the layer less than N has been changed. *Id.*

33.    For example, as detailed in Exhibits A-2 and A-3, Defendant has infringed at least claim 38 of the '249 patent by making, using, offering to sell, selling, and/or importing the ITU-T Accused Products, which are systems for providing broadband communications, comprising: a multi layered network having a plurality of Open System Interconnection (OSI) reference model layers functioning therein; a network monitor coupled to the multi-layered network, wherein the network monitor is adapted to: monitor at least one OSI reference model layer functioning in the multi layered network; determine that a quality of service event has occurred in the multi-layered network; and determine that the quality of service event occurred at layer N in the OSI reference model; and a network controller coupled to the multi-layered network and the network monitor,

wherein the network controller is adapted to: respond to the quality of service event in the multi layered network by changing the network provisioning at a layer less than N. *Id.*

34.     CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II:  INFRINGEMENT OF U.S. PATENT NO. 7,177,285

35.     CommWorks repeats and re-alleges the allegations in paragraphs 1-34 above as though fully set forth in their entirety.

36.     For purposes of this Count, the term "Accused Products" shall mean Microchip chips, SoCs, and/or devices supporting Wi-Fi Protected Setup (WPS) functionality, including, for example, the Microchip WPS Products.

37.     The USPTO duly issued U.S. Patent No. 7,177,285 (the "'285 patent") on February 13, 2007, after full and fair examination of Application No. 10/961,959 which was filed October 8, 2004.  The '285 patent is entitled "Time Based Wireless Access Provisioning."

38.     CommWorks owns all substantial rights, interest, and title in and to the '285 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

39.     CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '285 patent.

40.     The claims of the '285 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include

inventive components that improve upon the function and operation of preexisting network provisioning systems.  The written description of the '285 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

41.    For example, at the time of the invention, wireless access to data networks was not yet conventional.  Then existent systems for provisioning access to a network were impractical, such as for wireless devices which lacked a user interface configured for communicating provisioning information, or for simple home-based intranets, such as a wireless picture frame device lacking a control interface to read or extract identification information, such as a MAC address, to facilitate wireless access provisioning.  '285 patent at col. 3:13-26.  Further, wireless devices that did have a dedicated user interface were incapable of, or cumbersome in, communicating device identification and exchanging provisioning information, still requiring a user to be technically proficient to properly initiate and complete a provisioning process.  *Id.* at col. 3:27-36.

42.    The invention of the '285 patent improved upon existent network provisioning systems by enabling provisioning without requiring a user interface for the initiation of a provisioning process—"a major technological advance."  *Id.* at col. 3:37-41.  The invention of the '285 patent further improved upon existent provisioning systems by providing a wireless access provisioning structure and process with minimal device requirements and/or user proficiency, whereby a wireless device is readily provisioned by the provisioning system, and whereby other unauthorized devices within an access region are prevented from being provisioned by the provisioning system.  *Id.* at col. 3:42-49.  The invention of the '285 patent further improved upon existent provisioning

systems by providing a time-based wireless access provisioning system integrated with easily monitored parameters of a wireless device, such as the time monitoring of power on and/or start of signal transmission, for provisioning secure encrypted communication. *Id.* at col. 3:50-58. Moreover, the structure of the devices described in the '285 patent was not conventional at the time of the invention. Specifically, a device such as an access point, comprising a provisioning activation button, time-based provisioning logic, access control list, wired network logic, a wired network connection and a transceiver were not conventional (or even available) at the time of the invention.

43.    Defendant has directly infringed one or more claims of the '285 patent by making, using, offering to sell, selling, and/or importing the Accused Products identified above.

44.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '285 patent, as detailed in **Exhibit B** (Evidence of Use Regarding U.S. Patent No. 7,177,285).

45.    On information and belief, Defendant has infringed one or more claims of the '285 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States Wi-Fi Protected Setup ("WPS") compatible devices, such as, for example, the Microchip WPS Products.

46.    For example, as detailed in Exhibit B, Defendant has infringed at least claim 1 of the '285 patent by making, using, offering to sell, selling, and/or importing the Accused Products, which perform a process for provisioning between a wireless device and a network. The process for provisioning comprises the step of tracking an operating parameter of the wireless device within a service area, wherein the operating parameter of the wireless device comprises an onset of a signal transmission of the wireless device. *Id.* The process for provisioning further comprises

the step of initiating provisioning of the wireless device if the tracked operating parameter occurs within a time interval. *Id.*

47.     CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,463,596

48.     CommWorks repeats and re-alleges the allegations in paragraphs 1-47 above as though fully set forth in their entirety.

49.     For purposes of this Count, the term "Accused Products" shall mean Microchip chips, SoCs, and/or devices supporting Wi-Fi Protected Setup (WPS) functionality, including, for example, the Microchip WPS Products.

50.     The USPTO duly issued U.S. Patent No. 7,463,596 (the "'596 patent") on December 9, 2008, after full and fair examination of Application No. 11/673,513, which was filed on February 9, 2007. The '596 patent is entitled "Time Based Wireless Access Provisioning."

51.     CommWorks owns all substantial rights, interest, and title in and to the '596 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

52.     CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '596 patent.

53.     The claims of the '596 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include

inventive components that improve upon the function and operation of preexisting network provisioning systems.

54.   The written description of the '596 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

55.   For example, at the time of the invention, wireless access to data networks was not yet conventional.  Then existent systems for provisioning access to a network were impractical, such as for wireless devices which lacked a user interface configured for communicating provisioning information, or for simple home-based intranets, such as a wireless picture frame device lacking a control interface to read or extract identification information, such as a MAC address, to facilitate wireless access provisioning.  '596 patent at col. 3:13-26.  Further, wireless devices that did have a dedicated user interface were incapable of, or cumbersome in, communicating device identification and exchanging provisioning information, still requiring a user to be technically proficient to properly initiate and complete a provisioning process.  *Id.* at col. 3:27-36.

56.   The invention of the '596 patent improved upon existent network provisioning systems by enabling provisioning without requiring a user interface for the initiation of a provisioning process—"a major technological advance."  *Id.* at col. 3:37-41.  The invention of the '596 patent further improved upon existent provisioning systems by providing a wireless access provisioning structure and process with minimal device requirements and/or user proficiency, whereby a wireless device is readily provisioned by the provisioning system, and whereby other unauthorized devices within an access region are prevented from being provisioned by the provisioning system.

*Id.* at col. 3:42-49.  The invention of the '596 patent further improved upon existent provisioning systems by providing a time-based wireless access provisioning system integrated with easily monitored parameters of a wireless device, such as the time monitoring of power on and/or start of signal transmission, for provisioning secure encrypted communication.  *Id.* at col. 3:50-58. Moreover, the structure of the devices described in the '596 patent was not conventional at the time of the invention.  Specifically, a device such as an access point, comprising a provisioning activation button, time-based provisioning logic, access control list, wired network logic, a wired network connection and a transceiver were not conventional (or even available) at the time of the invention.

57.    Defendant has directly infringed one or more claims of the '596 patent by making, using, offering to sell, selling, and/or importing the Microchip WPS Products identified above.

58.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '596 patent, as detailed in **Exhibit C** to this Complaint (Evidence of Use Regarding U.S. Patent No. 7,463,596).

59.    On information and belief, Defendant has infringed one or more claims of the '596 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States Wi-Fi Protected Setup ("WPS") compatible devices, such as, for example, the Microchip WPS Products.

60.    For example, as detailed in Exhibit C, Defendant, using the Accused Products, has infringed at least claim 1 of the '596 patent by making, using, offering to sell, selling, and/or importing the Microchip WPS Products, which perform a process for associating devices.  The process for associating devices comprises the step of tracking an operating parameter of a first device, wherein the operating parameter of the first device comprises any of a power on of the first

device, and an onset of a signal transmission of the first device. *Id.* The process for associating devices further comprises the step of automatically associating the first device with at least one other device if the tracked operating parameter occurs within a time interval. *Id.*

61.     CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT IV: <u>INFRINGEMENT OF U.S. PATENT NO. 7,911,979</u>

62.     CommWorks repeats and re-alleges the allegations in paragraphs 1-61 above as though fully set forth in their entirety.

63.     For purposes of this Count, the term "Accused Products" shall mean Microchip chips, SoCs, and/or devices supporting Wi-Fi Protected Setup (WPS) functionality, including, for example, the Microchip WPS Products.

64.     The USPTO duly issued U.S. Patent No. 7,911,979 (the "'979 patent") on March 22, 2011, after full and fair examination of Application No. 12/323,399 which was filed on November 25, 2008. The '979 patent is entitled "Time Based Access Provisioning System And Process." A Certificate of Correction was issued on July 19, 2011.

65.     CommWorks owns all substantial rights, interest, and title in and to the '979 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

66.     CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '979 patent.

67.     The claims of the '979 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

68.     The written description of the '979 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

69.     For example, at the time of the invention wireless access to data networks was not yet conventional.  Then existent systems for provisioning access to a network were impractical, such as for wireless devices which lacked a user interface configured for communicating provisioning information, or for simple home-based intranets, such as a wireless picture frame device lacking a control interface to read or extract identification information, such as a MAC address, to facilitate wireless access provisioning.  '979 patent at col. 3:19-31.  Further, wireless devices that did have a dedicated user interface were incapable of, or cumbersome in, communicating device identification and exchanging provisioning information, still requiring a user to be technically proficient to properly initiate and complete a provisioning process.  *Id.* at col. 3:32-41.

70.     The invention of the '979 patent improved upon existent network provisioning systems by enabling provisioning without requiring a user interface for the initiation of a provisioning process—"a major technological advance." *Id.* at col. 3:42-46.  The invention of the '979 patent further improved upon existent provisioning systems by providing a wireless access provisioning structure and process with minimal device requirements and/or user proficiency, whereby a

wireless device is readily provisioned by the provisioning system, and whereby other unauthorized devices within an access region are prevented from being provisioned by the provisioning system. *Id.* at col. 3:47-53.  The invention of the '979 patent further improved upon existent provisioning systems by providing a time-based wireless access provisioning system integrated with easily monitored parameters of a wireless device, such as the time monitoring of power on and/or start of signal transmission, for provisioning secure encrypted communication.  *Id.* at col. 3:54-62. Moreover, the structure of the devices described in the '979 patent was not conventional at the time of the invention.  Specifically, a device such as an access point, comprising a provisioning activation button, time-based provisioning logic, access control list, wired network logic, a wired network connection and a transceiver were not conventional (or even available) at the time of the invention.

71.    Defendant has directly infringed one or more claims of the '979 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products identified above.

72.    Defendant has directly infringed either literally or under the doctrine of equivalents, at least claim 1 of the '979 patent, as detailed in **Exhibit D** to this Complaint (Evidence of Use Regarding U.S. Patent No. 7,911,979).

73.    On information and belief, Defendant has infringed one or more claims of the '979 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States Wi-Fi Protected Setup ("WPS") compatible devices, such as, for example, the Microchip WPS Products.

74.    For example, as detailed in Exhibit D, Defendant, using the Accused Products, has infringed at least claim 1 of the '979 patent by making, using, offering to sell, selling, and/or

importing the Accused Products, which perform a provisioning process performed by a provisioning system having provisioning logic. The provisioning process performed comprises tracking, by the provisioning logic, an operating parameter of a first device, wherein the operating parameter of the first device comprises any of a power on of the first device, and an onset of a signal transmission of the first device. *Id.* The provisioning process performed in the Accused Products further comprises sending a signal to initiate provisioning of the first device with a network if the tracked operating parameter occurs within a designated time interval. *Id.*

75.    CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT V:  INFRINGEMENT OF U.S. PATENT NO. RE44,904

76.    CommWorks repeats and re-alleges the allegations in paragraphs 1-75 above as though fully set forth in their entirety.

77.    For purposes of this Count, the term "Accused Products" shall mean any Microchip chips and/or devices and/or software supporting Wi-Fi Multimedia and 802.11-2007+ functionality, including, for example, the Microchip Wi-Fi Multimedia Products.

78.    The USPTO duly and lawfully reissued U.S. Patent No. RE44,904 (the "'904 patent") on May 20, 2014. The '904 patent is entitled "Method For Contention Free Traffic Detection."

79.    CommWorks owns all substantial rights, interest, and title in and to the '904 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

80.    CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '904 patent.

81.    The claims of the '904 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

82.    The written description of the '904 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

83.    For example, at the time of the invention, "conventionally … transmission differentiation based on priority was not conducted at all." '904 patent at col. 2:9-10.  Obtaining priority information for traffic transmitted through an Access Point (AP) required searching all fields in all frames for indications of the priority state of the actual data frame, resulting in all fields in all frames being checked and all headers being analyzed, starting from the outer most headers, until the right field in the header had been found.  *Id.* at col. 1:63-2:2.  This measure was very complex, took a long time, and required a large amount of processing, especially for complex tunneling protocols.  *Id.* at col. 2:5-8.  All the frame headers and protocols which can be included in the data frames transmitted via the network had to be known, hence, the amount of information needed for identifying the data was huge.  *Id.* at col. 2:8-14.  Such a huge amount of information was typically too heavy to handle in small and low price equipment like WLAN access points

(AP). *Id.* Further, then existing systems according to the IEEE 802.11 standard did not separate traffic based on priority. *Id.* at col. 2:20-25.

84.     The invention of the '904 patent improved upon conventional network traffic routing systems by providing methods by which priority traffic can easily be distinguished from normal traffic without the need of complex processing making it possible to execute in a low cost and possibly low performance AP. *Id.* at col. 2:29-32, 3:2-4, 3:52-53. The methods of the invention of the '904 patent further improved upon conventional network traffic routing systems by easily finding higher priority traffic from the stream of MAC layer frames without necessarily requiring knowledge of the upper layer protocols. *Id.* at col. 2:62-65. The methods of the invention of the '904 patent further improved upon conventional network traffic routing systems by being protocol-independent and flexible such that their configuration may be done in an external configuration program; with the Access Point not needing to know anything about the processed traffic; further alleviating the need of complex structure of the device. *Id.* at col. 3:5-8, 3:14-21. A further advantage over conventional network traffic routing systems is that installation of new software or hardware in the network element would not be required when new protocols or modified protocols are introduced in the network. *Id.* at col. 3:22-31.

85.     Defendant has directly infringed one or more claims of the '904 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products identified above.

86.     Defendant has directly infringed either literally or under the doctrine of equivalents, at least claim 1 of the '904 patent, as detailed in **Exhibit E** to this Complaint (Evidence of Use Regarding U.S. Patent No. RE44,904).

87.    On information and belief, Defendant, using the Accused Products, has infringed one or more claims of the '904 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by performing methods for contention free traffic detection using Wi-Fi Multimedia ("WMM") and/or 802.11-2007+ compatible chips, such as, for example, the Microchip Wi-Fi Multimedia Products.

88.    For example, as detailed in <u>Exhibit E</u>, Defendant, using the Accused Products, has infringed at least claim 1 of the '904 patent by performing a method comprising extracting a bit pattern from a predetermined position in a frame.  The method further comprises comparing said extracted bit pattern with a search pattern.  *Id.*  The method further comprises identifying a received frame as a priority frame in case said extracted bit pattern matches with said search pattern.  *Id.* The method further comprises forwarding said received frame to a high priority queue in case said frame is detected to be a high priority frame during a special period for sending priority traffic.  *Id.* The method further comprises adjusting the duration of the special period for sending priority traffic according statistic information regarding sent priority frames.  *Id.*

89.    CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VI: <u>INFRINGEMENT OF U.S. PATENT NO. 7,027,465</u>

90.    CommWorks repeats and re-alleges the allegations in paragraphs 1-89 above as though fully set forth in their entirety.

91.    For purposes of this Count, the term "Accused Products" shall mean any Microchip chips and/or devices and/or software supporting Wi-Fi Multimedia and 802.11-2007+ functionality, including, for example, the Microchip Wi-Fi Multimedia Products.

92.    The USPTO duly issued U.S. Patent No. 7,027,465 (the "'465 patent") on April 11, 2006, after full and fair examination of Application No. 10/167,986 which was filed on June 11, 2002.  The '465 patent is entitled "Method For Contention Free Traffic Detection."

93.    CommWorks owns all substantial rights, interest, and title in and to the '465 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

94.    CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '465 patent.

95.    The claims of the '465 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

96.    The written description of the '465 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

97.    For example, at the time of the invention, "conventionally … transmission differentiation based on priority was not conducted at all."  '465 patent at col. 2:9-10. Obtaining

priority information for traffic transmitted through an Access Point (AP) required searching all fields in all frames for indications of the priority state of the actual data frame, resulting in all fields in all frames being checked and all headers being analyzed, starting from the outer most headers, until the right field in the header had been found. *Id.* at col. 1:53-59. This measure was very complex, took a long time, and required a large amount of processing, especially for complex tunneling protocols. *Id.* at col. 1:62-65. All the frame headers and protocols which can be included in the data frames transmitted via the network had to be known, hence, the amount of information needed for identifying the data was huge. *Id.* at col. 1:66-2:4. Such a huge amount of information was typically too heavy to handle in small and low price equipment like WLAN access points (AP). *Id.* Further, then existing systems according to the IEEE 802.11 standard did not separate traffic based on priority. *Id.* at col. 2:11-15.

98.     The invention of the '465 patent improved upon conventional network traffic routing systems by providing methods by which priority traffic can easily be distinguished from normal traffic without the need of complex processing making it possible to execute in a low cost and possibly low performance AP. *Id.* at col. 2:19-23, 2:60-62, 3:43. The methods of the invention of the '465 patent further improved upon conventional network traffic routing systems by easily finding higher priority traffic from the stream of MAC layer frames without necessarily requiring knowledge of the upper layer protocols. *Id.* at col. 2:53-56. The methods of the invention of the '465 patent further improved upon conventional network traffic routing systems by being protocol-independent and flexible such that their configuration may be done in an external configuration program; with the Access Point not needing to know anything about the processed traffic; further alleviating the need of complex structure of the device. *Id.* at col. 2:63-66, col. 3:5-11. A further advantage over conventional network traffic routing systems is that installation of new software

or hardware in the network element would not be required when new protocols or modified protocols are introduced in the network. *Id.* at col. 3:12-21.

99. Defendant has directly infringed one or more claims of the '465 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products identified above.

100. Defendant has directly infringed either literally or under the doctrine of equivalents, at least claim 1 of the '465 patent, as detailed in **Exhibit F** to this Complaint (Evidence of Use Regarding U.S. Patent No. 7,027,465).

101. On information and belief, Defendant, using the Accused Products, has infringed one or more claims of the '465 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by performing methods for contention free traffic detection using Wi-Fi Multimedia (WMM) and/or 802.11-2007+ compatible chips and devices, such as, for example, the Microchip Wi-Fi Multimedia Products.

102. For example, as detailed in Exhibit F, Defendant has infringed at least claim 1 of the '465 patent by performing a method for detecting priority of data frames in a network. The method for detecting priority of data frames comprises the step of extracting a bit pattern from a predetermined position in a frame. *Id.* The method for detecting priority of data frames further comprises the step of comparing said extracted bit pattern with a search pattern. *Id.* The method for detecting priority of data frames further comprises the step of identifying a received frame as a priority frame in case said extracted bit pattern matches with said search pattern. *Id.* In the method for detecting priority of data frames, the predetermined position in said frame is defined by the offset of said bit pattern in said frame. *Id.*

103.    CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 6,891,807

104.    CommWorks repeats and re-alleges the allegations in paragraphs 1-103 above as though fully set forth in their entirety.

105.    For purposes of this Count, the term "Accused Products" shall mean Microchip chips, SoCs, and/or devices supporting Wi-Fi Protected Setup (WPS) functionality, including, for example, the Microchip WPS Products.

106.    The USPTO duly issued U.S. Patent No. 6,891,807 (the "'807 patent") on May 10, 2005, after full and fair examination of Application No. 10/341,847 which was filed on January 13, 2003.  The '807 patent is entitled "Time Based Wireless Access Provisioning."

107.    CommWorks owns all substantial rights, interest, and title in and to the '807 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

108.    CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '807 patent.

109.    The claims of the '807 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

110.    The written description of the '807 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

111.    For example, at the time of the invention, wireless access to data networks was not yet conventional. Then existent systems for provisioning access to a network were impractical, such as for wireless devices which lacked a user interface configured for communicating provisioning information, or for simple home-based intranets, such as a wireless picture frame device lacking a control interface to read or extract identification information, such as a MAC address, to facilitate wireless access provisioning. '807 patent at col. 3:5-18. Further, wireless devices that did have a dedicated user interface were incapable of, or cumbersome in, communicating device identification and exchanging provisioning information, still requiring a user to be technically proficient to properly initiate and complete a provisioning process. *Id.* at col. 3:19-28.

112.    The invention of the '807 patent improved upon existent network provisioning systems by enabling provisioning without requiring a user interface for the initiation of a provisioning process—"a major technological advance." *Id.* at col. 3:29-33. The invention of the '807 patent further improved upon existent provisioning systems by providing a wireless access provisioning structure and process with minimal device requirements and/or user proficiency, whereby a wireless device is readily provisioned by the provisioning system, and whereby other unauthorized devices within an access region are prevented from being provisioned by the provisioning system. *Id.* at col. 3:34-41. The invention of the '807 patent further improved upon existent provisioning systems by providing a time-based wireless access provisioning system integrated with easily

monitored parameters of a wireless device, such as the time monitoring of power on and/or start of signal transmission, for provisioning secure encrypted communication. *Id.* at col. 3:42-50. Moreover, the structure of the devices described in the '807 patent was not conventional at the time of the invention. Specifically, a device such as an access point, comprising a provisioning activation button, time-based provisioning logic, access control list, wired network logic, a wired network connection and a transceiver were not conventional (or even available) at the time of the invention.

113. Defendant has directly infringed either literally or under the doctrine of equivalents, at least claim 17 of the '807 patent, as detailed in **Exhibit G** to this Complaint (Evidence of Use Regarding U.S. Patent No. 6,891,807).

114. On information and belief, Defendant has infringed one or more claims of the '807 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States Wi-Fi Protected Setup ("WPS") compatible consumer electronics chips, such as, for example, the Microchip WPS Products.

115. For example, as detailed in Exhibit G, Defendant has infringed at least claim 17 of the '807 patent by making, using, offering to sell, selling, and/or importing the Accused Products, which include a time based network access provisioning system between a wireless device and a network. The time based network access provisioning system comprises a network access point connected to the network, the network access point comprising logic for tracking operation of the wireless device. *Id.* The time based network access provisioning system further comprises logic for provisioning the wireless device if the operation of the wireless device occurs within an activatable time interval. *Id.*

116.     CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

117.     CommWorks hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

118.     WHEREFORE, CommWorks requests that the Court find in its favor and against Defendant, and that the Court grant CommWorks the following relief:

    a.  Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by the Defendant or others acting in concert therewith;

    b.  Judgment that Defendant account for and pay to CommWorks all damages to and costs incurred by CommWorks because of Defendant's infringing activities and other conduct complained of herein;

    c.  Pre-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

    d.  That this Court declare this an exceptional case and award CommWorks its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

    e.  All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>February 10, 2026</u>          Respectfully submitted,

By:<u>*/s/ James F. McDonough, III*</u>

James F. McDonough, III (GA 117088) *
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Ave., Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

Jonathan L. Hardt (TX 24039906)*
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

**Attorneys for *Plaintiff COMMWORKS SOLUTIONS LLC***

\* Admitted to the Western District of Texas

**List Of Exhibits**

A-1 Evidence of Use Regarding Infringement of U.S. Patent No. 6,832,249: IEEE 802.3ah
A-2 Evidence of Use Regarding Infringement of U.S. Patent No. 6,832,249: Chips
     Implementing ITU-T G.984 and ITU-T G.9807.1 OLT
A-3 Evidence of Use Regarding Infringement of U.S. Patent No. 6,832,249:  Devices
     Implementing ITU-T G.984 and ITU-T G.9807.1
B.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,177,285
C.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,463,596
D.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,911,979
E.  Evidence of Use Regarding Infringement of U.S. Patent No. RE44,904
F.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,027,465
G.  Evidence of Use Regarding Infringement of U.S. Patent No. 6,891,807